## APPEAL OF ARTHUR ZINN.

Docket No. 2789.    Submitted July 30, 1925.    Decided February 23, 1926.

> On the facts stated, *held*, that the taxpayer in 1919 made a gift of certain property to his wife and did not derive a taxable gain from the subsequent sale of that property.

*F. S. Bright*, *E. J. Nathan*, and *B. H. Stern*, *Esqs.*, for the taxpayer.

*Willis D. Nance* and *E. C. Lake*, *Esqs.*, for the Commissioner.

Before IVINS and MORRIS.

This appeal is from the determination of a deficiency in income tax for the year 1919 in the amount of $678,840.39, and arises from a transaction which the Commissioner contends constituted a sale of stock by the taxpayer at a profit.

### FINDINGS OF FACT.

The taxpayer is an individual residing in New York City.

During the early part of 1919, and for many years prior thereto, he was engaged with his brother, Martin Zinn, and Frederick H. Hoffmann in the manufacture and sale of Gem safety razors, in which business each of the three owned an equal interest. The taxpayer and Martin Zinn were also during the same period engaged in the metal novelty business under the name of Simon Zinn, Inc., in which Hoffmann had no interest. Throughout taxpayer's connection with the Gem safety razor business, it was conducted under Hoffmann's management, the taxpayer and Martin Zinn devoting their major attention to their metal novelty business.

On or about January 8, 1919, the Gem Safety Razor Corporation was incorporated, but no property was at that time transferred to that corporation and none of its stock was issued.

On July 22, 1919, a conference was called, at which were present, the taxpayer, Frederick H. Hoffmann, Martin Zinn, one Stern, counsel for the taxpayer, and his associates, one Dammann, counsel for the proposed American Safety Razor Corporation, one Bennett, also counsel for those interests, one Kaufmann, owner of the Ever-Ready Safety Razor business, and one Storm, a promoter, who was endeavoring to bring about the sale of the Gem safety razor business. At that conference, Kaufmann and his associates offered to pay $4,000,000 for the Gem safety razor business. The taxpayer and his associates at that time indicated that the the price was satisfactory. It developed, however, that a very heavy tax would result from such a sale and the taxpayer and his associates stated that they would not make a sale which would produce a net price to them of less than $3,600,000. Thereupon, one of the conferees suggested that if the taxpayer and his associates should make a gift of their interests in the business to their wives, and their wives should consummate the transaction, the gifts being made in absolute good faith, and the taxpayer and his associates should not receive the proceeds of the sale, no tax would result, except possibly upon the increment of value between the value at the date of the gift and the sale price.

On July 25, the taxpayer left to spend the week-end at his summer home in Bethlehem, N. H., in the White Mountains. Martin Zinn and Frederick H. Hoffmann departed for the summer home of Martin Zinn at Lake Placid, N. Y., at or about the same time.

On Saturday evening, July 26, taxpayer's brother, Martin, called him from Lake Placid and announced that he and Hoffmann intended to turn their interests in the Gem safety razor business over to their wives. The taxpayer had theretofore discussed the matter with his wife and then communicated to her his intention to turn over to her his interest in the business.

On Sunday night, July 27, the taxpayer left for New York, arriving on the morning of July 28. Hoffmann and Martin Zinn also arrived from Lake Placid on that date. An organization meeting of the Gem Safety Razor Corporation was held and 21,800 shares of its common stock, and 100 shares of its Class B preferred stock, of a total par value of $1,100,000, were issued to the taxpayer and his associates, of which the taxpayer received 32 shares of preferred stock, of a par value of $3,200, and 7,267 shares of a par value of $363,350, in exchange for cash, machinery, and processes. On the same day the taxpayer and his associates instructed Stern to take all necessary legal steps to carry into effect the transfer of their interests to their respective wives.

On July 29, the taxpayer indorsed all of the stock certificates in the Gem Safety Razor Corporation theretofore issued to him, except qualifying shares, and executed an assignment of his interest therein to his wife. Thereupon, the certificates issued in the name of the taxpayer were surrendered and new certificates of stock were issued in the name of the taxpayer's wife. The certificates so issued were sent by Stern to Mrs. Zinn, and she in turn indorsed them and returned them to him. At or about the same time Stern sent to Mrs. Zinn the draft of an agreement with the American Safety Razor Corporation for the sale of her stock and interest in the Gem Safety Razor Corporation for a pro rata share of $4,000,000, $250,000 to be paid on the execution of the agreement and $3,750,000 to be paid at a later date, and in default of payment of the latter amount the initial $250,000 was to be forfeited. This agreement was signed by Mrs. Zinn and returned to Stern and, on August 5, 1919, was delivered by Stern, together with other copies signed by Mrs. Hoffmann and Mrs. Tessie Zinn, wife of Martin Zinn, to the American Safety Razor Corporation. On August 12, payment of the first $250,000 was made and delivered to Mrs. Hoffmann, who deposited the same in her bank for the account of herself, Tessie Zinn, and Florence C. Zinn. On or about September 22, 1919, the American Safety Razor Corporation made a final payment of $3,750.000 to Stern, who delivered $1,250,000 to Florence C. Zinn, wife of taxpayer, who received it, and has ever since retained it or the investments or reinvestments into which it was converted. At the same time, the American Safety Razor Corporation entered into separate agreements with Emma Hoffmann, Tessie Zinn, and Florence C. Zinn, whereby it agreed to indemnify each of them " upon being notified in writing * * * within six years hereof of a final decision or decisions of the United States Treasury Department levying and assessing * * * a tax in excess of $133,333.33 * * * up to $533,333.33." At the same time the taxpayer and his associates entered into an agreement with the American Safety Razor Corporation not to engage in the safety razor business for a period of 10 years from and after the date of that agreement.

In the audit of the taxpayer's return, and as a basis for the deficiency here in issue, the Commissioner asserted that the taxpayer derived a profit from the sale of the stock of the Gem Safety Razor Corporation to the American Safety Razor Corporation in the amount of the difference between one-third of $4,000,000 and the amount hereinabove set forth as the par value of stock of the Gem Safety Razor Corporation, received by the taxpayer in the taxable year, transferred to his wife, and by her sold to the American Safety Razor Corporation.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

MORRIS: In this appeal the sole question presented by the evidence is whether the transfer by the taxpayer of his stock to his wife was a mere subterfuge whereby he sought to evade a tax upon a profit realized from the sale of his interest in the Gem safety razor business. Upon this point, we are clear. The taxpayer prior to the consummation of the sale of the business made a gift of the property he then owned, namely, his stock in the Gem Safety Razor Corporation, to his wife, and from the moment of that gift his wife exercised entire dominion over the stock so given. She sold it, she received the proceeds, and, except in very minor particulars, has retained those proceeds not only as her own property but, so far as the record discloses, without in any way directly or indirectly contributing to the benefit of the taxpayer. She did reimburse her husband for expenditures made by him upon their summer home in New Hampshire, which home was acquired and is still owned by her and in her own separate right, and she did acquire a home in which they both reside in New York City. This was, however, in her own name and retained as her separate property.

We find nothing in the record to indicate that the transaction was other than one involving the absolute gift of stock and the subsequent sale thereof by the donee from which the taxpayer did not realize taxable gain.

On reference to the Board, ARUNDELL did not participate.

KORNER, MARQUETTE, SMITH, and TRUSSELL dissent.